**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

**Minneapolis Retail Meat Cutters and Food Handlers Health and Welfare Fund, Minneapolis Retail Meat Cutters and Food Handlers Pension Fund,**

**Plaintiffs,**

**v.**

**Harberts Foods, LLC, and BFL Three, LLC,**

**Defendants.**

**Civil No. 01-2419 (DSD/SRN)**

**REPORT AND RECOMMENDATION**

---

Pamela Hodges Nissen, Esq., on behalf of Plaintiffs

Jill N. Brown, Esq., on behalf of Defendants

---

SUSAN RICHARD NELSON, United States Magistrate Judge

The above entitled matter came before the undersigned United States Magistrate Judge on Defendant BFL Three's Motion to Dismiss Plaintiffs' First Amended Complaint Against BFL Three, LLC Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (Doc. No. 10). This case has been referred to the undersigned for resolution of pretrial matters pursuant to 28 U.S.C. § 636 and Local Rule 72.1.

For the reasons set forth below, Defendant BFL Three's motion should be denied.

## I. BACKGROUND

Plaintiffs are Health, Welfare, and Pension Funds for the Minneapolis Retail Meat



JAN 2 8 2003
FILED
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK

Cutters and Food Handlers (Plaintiffs/the Funds). Prior to selling its business, Defendant Harberts Foods operated a grocery store in Plymouth, Minnesota. Under the terms of a collective bargaining agreement, Defendant Harberts Foods was required to contribute to the Funds on behalf of all employees covered by the bargaining agreement. Between October 2000 and January 2002, Defendant Harberts Foods allegedly did not make its proper contribution to the Funds. On January 15, 2002, Defendant BFL Three purchased the assets of Defendant Harberts Foods. Defendant BFL Three then began operations as a grocery store. Plaintiffs/the Funds originally brought suit only against Defendant Harberts Foods for the collection of unpaid contributions pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3) and ERISA § 515, 29 U.S.C. § 1145. Upon learning of Defendant BFL Three's purchase of Defendant Harberts Foods, Plaintiffs amended its complaint to include a claim against BFL Three on a theory of successor corporate liability.

In its First Amended Complaint, Plaintiffs allege that there is substantial continuity between Defendant Harberts Foods and Defendant BFL Three, and that Defendant BFL Three knew or should have known that Defendant Harberts Foods had not properly contributed to the Funds when Defendant BFL Three purchased the assets of Defendant Harberts Foods.

Defendant BFL Three has moved to dismiss the complaint against it for failure to state a claim upon which relief may be granted. Defendant BFL Three argues that Plaintiffs have not adequately pled a claim for relief under the four common exceptions to the general rule that a business that purchases all the assets of another business does not succeed to the selling business' debts and obligations. Defendant BFL Three further argues that Plaintiffs' attempt to plead a claim based on a more liberal exception known as substantial continuity cannot withstand

scrutiny because such a theory is not a recognized cause of action in the Eighth Circuit.

## II. STANDARD OF REVIEW

When considering a motion to dismiss for failure to state a claim upon which relief may be granted under Federal Rule of Civil Procedure 12(b)(6), "we must assume that all the facts alleged in the complaint are true" and generally construe the complaint in the light most favorable to the plaintiff. E.g., Coleman v. Watt, 40 F.3d 255, 258 (8th Cir. 1994). Although "the complaint must contain sufficient facts, as opposed to mere conclusions, to satisfy the legal requirements of the claim to avoid dismissal," DuBois v. Ford Motor Credit Co., 276 F.3d 1019, 1022 (8th Cir. 2002), a court "may dismiss 'only if it is clear that no relief can be granted under any set of facts that could be proved consistent with the allegations.'" E.g., Frey v. City of Herculaneum, 44 F.3d 667, 671 (8th Cir. 1995).

## III. DISCUSSION

### A. Plaintiffs' Complaint Is Based On A Viable Legal Theory

"As a general rule, a business entity that purchases all the assets of another corporation does not succeed to its debts and obligations." Soo Line R. Co. v. B.J. Carney & Co., 797 F.Supp. 1472, 1482 (D. Minn. 1992) (citing Wallace v. Dorsey Trailers Southeast, Inc., 849 F.2d 341, 342 (8th Cir. 1988)); accord Anderson v. City of Minnetonka, No. CV 3-90-312, 1993 WL 95361, at *5 (D. Minn. Jan. 27, 1993). There are, however, the following four established exceptions to this general rule that allow for corporate successor liability:

> 1) where the purchaser expressly or impliedly agrees to assume such debts;
> 2) where the transaction amounts to a consolidation or merger of the corporation (de facto merger);
> 3) where the purchasing corporation is merely a continuation of the selling corporation (mere continuation); and

4) where the transaction is entered into fraudulently in order to escape liability. E.g., Soo Line, 797 F.Supp. at 1482.

The exceptions to the traditional rule were "developed to prevent corporate evasions of debt through transactional technicalities." United States v. Mexico Feed and Seed Co., Inc., 980 F.2d 478, 487 (8th Cir. 1992).

In addition to these four exceptions, a fifth, less widely applied, exception exists called the "substantial continuity," "continuity of enterprise," or "continuity of business operations" exception (hereinafter substantial continuity). See generally Mexico Feed, 980 F.2d at 487-88 (detailing the history of the test); Sylvester Bros. Dev. v. Burlington N. R.R., 772 F.Supp. 443, 448 n.6 (D. Minn. 1990). As noted in Mexico Feed, the substantial continuity test was originally created by a line of Supreme Court labor cases to further the policy of the labor laws. Mexico Feed, 980 F.2d at 487-88 (citing Golden State Bottling Co. v. NLRB, 414 U.S. 168 (1973)). The substantial continuity exception, being an off-shoot of the general mere continuation exception, "focuses on the continuity of a business operation rather than making the continuity of stock, shareholders, and directors determinative." Sylvester, 772 F.Supp. at 448. Key to a finding of liability under the substantial continuity test is, of course, that there is a substantial continuity between the purchasing company's and the selling company's business operations, and, most importantly, that the purchasing company have knowledge of the selling company's existing liabilities. E.g., Mexico Feed, 980 F.2d at 488; Upholsterers' Int'l Union Pension Fund v. Artistic Furniture, 920 F.2d 1323, 1327, 1329 (7th Cir. 1990). In creating the more liberal substantial continuity exception, the Supreme Court justified it by "noting that the 'substantial continuation' purchaser's knowledge of pending wrongs unremedied made broadening the net of

liability fair." Mexico Feed, 980 F.2d at 488 (citing Golden State Bottling Co. v. NLRB, 414 U.S. 168, 182-85 (1973)). This "factor of knowledge or notice ensured that 'substantial continuation' corporations not only would be able to protect themselves through purchase price adjustments or satisfactory indemnity provisions, but would be in some way responsible for the unfair labor practice remedied." Id. (citing Golden State Bottling Co. v. NLRB, 414 U.S. 168, 185 (1973)); accord Artistic Furniture, 920 F.2d at 1326 (citing Golden State Bottling Co. v. NLRB, 414 U.S. 168, 185 (1973)).

Neither this Court nor the parties, however, have found a case in the Eighth Circuit addressing the issue of whether the substantial continuity exception is a viable theory of corporate successor liability in the context of unpaid ERISA fund contributions. The Eighth Circuit, however, has adopted and applied the substantial continuity exception in the context of the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA). See United States v. Mexico Feed and Seed Co., Inc., 980 F.2d 478, 488-90 (8th Cir. 1992). In Mexico Feed, PWOS, Inc. contracted with Mexico Feed to place four waste oil tanks on Mexico Feed's land. Id. at 482. The oil PWOS put in the tanks contained PCBs, and PWOS allowed the tanks to fall into disrepair, contaminating the surrounding land. Id. at 483. Moreco Energy, Inc. later purchased the assets of PWOS. Id. The district court found Moreco liable for the clean-up cost under the substantial continuity test. Id. at 487. On appeal, the Eighth Circuit reviewed the history and purpose of the substantial continuity test and CERCLA, and it found that "in the CERCLA context, the imposition of successor liability under the 'substantial continuation' test is justified by a showing that in substance, if not in form, the successor is a responsible party." Id. at 488. The Eighth Circuit went on to analyze the facts surrounding Moreco's relationship with

and purchase of PWOS, ultimately concluding the factual situation "does not amount to a 'substantial continuation' for the purpose of holding Moreco responsible and liable under CERCLA." Id. at 490.

There is some dispute, possibly only semantics, about whether the Eighth Circuit adopted and applied the substantial continuity test in Mexico Feed. In Anderson v. City of Minnetonka, No. CV 3-90-312, 1993 WL 95361, at *7 (D. Minn. Jan. 27, 1993), the court said that the Eighth Circuit "refused to apply this broader test in the case before it because the facts indicted that 'the very concern animating the doctrine of corporate successor liability--that the corporate veil thwart plaintiffs in actions against corporations which have sold their assets and distributed the proceeds--is not present.'"[1] (quoting Mexico Feed, 980 F.2d at 490). This quotation from Mexico Feed, however, only relates to one of the factual factors that the Eighth Circuit relied on in concluding that under the facts of that particular case a finding of liability under the substantial continuity exception was not warranted. See Mexico Feed, 980 F.2d at 490 (discussing the fact that Moreco gave PWOS adequate consideration, and PWOS owner, Jack Pierce, was held jointly and severally liable). Moreover, another court in the Eighth Circuit, Interstate Power Co. v. Kansas City Power & Light Co., 909 F.Supp. 1241, 1276 (N.D. Iowa 1993), has acknowledged that "[t]he Eighth Circuit has also adopted and applied the 'substantial continuity' test for corporate successorship in the CERCLA context, also known as the 'continuing business

---

[1] In a *pre*-Mexico Feed case involving CERCLA, another court within the Eighth Circuit "decline[d] the invitation to adopt the continuing business enterprise version of the mere continuance exception" basically because rigid application of the majority rule neither produced an inequitable outcome nor frustrated a statutory purpose. Sylvester Bros. Dev. Co. v. Burlington N. R.R., 772 F.Supp. 443, 449 (D. Minn. 1990).

enterprise test,' in the Mexico Feed case." Accordingly, a fair reading of Mexico Feed reveals that the Eighth Circuit adopted the substantial continuity test in the context of CERCLA and applied the test but found that under the facts of that case liability under the test was not appropriate.

Another United States Circuit Court of Appeals has persuasively held, in a nearly identical situation, that the substantial continuity test is a viable theory for which relief may be granted. See Upholsterers' Int'l Union Pension Fund v. Artistic Furniture, 920 F.2d 1323, 1325-30 (7th Cir. 1990). In Artistic Furniture, Pontiac Furniture's employees were members of a union, and under the collective bargaining agreement Pontiac Furniture was suppose to contribute to the union's multiemployer pension fund. Id. at 1324. Pontiac Furniture began to experience financial troubles and failed to contribute to the funds. Id. at 1324-25. Pontiac Furniture's creditor then foreclosed and sold all of Pontiac Furniture's assets to Artistic Furniture. Id. at 1325. The Funds initially sued Pontiac Furniture but later amended the complaint seeking to hold Artistic Furniture liable as a corporate successor. Id. In "balanc[ing] the well-articulated federal interest in ensuring that employers maintain properly funded pension plans and the social interest in facilitating the market in corporate and other productive assets," the court reviewed the policy considerations of ERISA and the Multiemployer Pension Plan Amendments Act of 1980 (29 U.S.C. § 1132 et seq.). In adopting and applying the substantial continuity test, the Seventh Circuit held:

> Absent the imposition of successor liability, the hardships that Congress sought to stave off in enacting the MPPAA may indeed result in cases where a predecessor employer is unable to fulfill its contribution obligation. As old collective bargaining agreements are renegotiated, and new ones formulated, present and future employers will have to increase their plan contributions in

> order to cover shortfalls created by the financial collapse of delinquent employers. In the face of this possible consequence, we believe that the congressional policies animating the MPPAA support the imposition of successor liability for unpaid multiemployer pension fund contributions when the other prerequisites to successor liability have been met.

Id. at 1329.

The Eighth Circuit has decided a somewhat analogous ERISA case to the instant case. In Greater Kansas City Laborers Pension Fund v. Superior Gen. Contractors, Inc., 104 F.3d 1050 (8th Cir. 1997), Superior General, a construction/contracting company, was a signatory to a collective bargaining agreement whereby it was supposed to contribute to its employees' fringe benefit funds. Id. at 1052-53. New Bohnert, also a construction/contracting company, did a substantial amount of business with Superior General as the management of both companies were familiar with each other. Id. Superior General, however, ceased operations due to financial trouble. Id. at 1053. The funds then sued Superior General for unpaid contributions. Id. The funds also sought to hold New Bohnert liable as the alter ego of Superior General. Id. The court held that the corporate law alter ego doctrine applied as opposed to the more liberal labor law standard. The court reasoned that:

> Although the underlying congressional policy behind ERISA favors the disregard of the corporate entity in situations where employees are denied their pension benefits, such policy interests are not implicated in the present case, which does not involve an individual pensioner's claim for benefits; rather, it involves a pension fund's attempt to collect unpaid contributions. Moreover, even if such interests were at stake in the present case, we believe the corporate law standard for determining alter ego status strikes an appropriate balance between the congressional intent of ERISA and the long-established principle that a corporation's existence is presumed to be separate and may be disregarded only under narrowly prescribed circumstances.

Id. at 1055 (citations omitted).

This statement about the policy implications of ERISA and piercing the corporate veil, although helpful to determining whether a rigid application of the corporate successor liability rule would frustrate the purpose of ERISA public policy, is limited to the situation of which alter ego rule should apply.

Acknowledging that "the issue of successor liability is 'dreadfully tangled, reflecting the difficulty of striking the right balance between the competing interests at stake,'" Upholsterers' Int'l Union Pension Fund v. Artistic Furniture, 920 F.2d 1323, 1325 (7th Cir. 1990), this Court must also view the issue through the lens of the procedural posture of this case. Given that the Eighth Circuit has applied the substantial continuity test in contexts other than labor cases and that another Circuit has applied the substantial continuity test in a nearly identical situation, this Court is not left with a clear understanding that "there is some insuperable bar to relief" for the claim that Plaintiffs make in its First Amended Complaint. Frey v. City of Herculaneum, 44 F.3d 667, 671 (8th Cir. 1995) (standard of review for motion to dismiss) see also United States v. Western Processing Co., Inc. 751 F.Supp. 902, 904-906 (W.D. Wash. 1990) (allowing, in the CERCLA context, a claim under the substantial continuity/continuing business enterprise test where the Ninth Circuit had neither rejected nor expressly adopted the test).

### B. The Allegations in Plaintiffs' First Amended Complaint Are Sufficient To State A Claim

The allegations contained in Plaintiffs' First Amended Complaint are enough to state a claim under the substantial continuity exception. With regard to the continuity element, Plaintiffs' First Amended Complaint alleges:

(1) "There is substantial continuity of business operations between Harberts Foods and BFL Three." (First Am. Compl. ¶21).

> (2) "Defendant BFL Three maintained the retail business operations at the Plymouth address, using the same facility, equipment, employees." (First Am. Compl. ¶20).
> (3) "BFL Three retained Harberts Foods' employees, supervisors, computers, suppliers, and leased the same premises." (First Am. Compl. ¶22).

With regard to the notice element, Plaintiffs' First Amended Complaint alleges:

> (1) "Defendant BFL Three purchased Harberts Foods' assets on January 15, 2002." (First Am. Compl. ¶19).
> (2) "BFL Three knew or should have known that Harberts Foods was delinquent in its submission of fringe benefit contributions. Such information was available from various notices provided to Harberts Foods from the Plaintiffs' offices, and would have been available from the employees." (First Am. Compl. ¶23).

For purposes of a motion to dismiss, this Court accepts these allegations as true and draws all reasonable inferences from the allegations. The allegations are sufficient to put Defendants on notice that Plaintiffs are making a claim of corporate successor liability under the substantial continuity exception to the general rule.

Plaintiffs' First Amended Complaint does not state a claim upon which relief may be granted with regard to any of the other four corporate successor liability exceptions (agrees to assume, de factor merger, mere continuation, or fraud). At the hearing on this matter and in its reply memorandum, (Def. BFL Three's Reply Br. in Supp. of Its Mot. to Dismiss, at 3, 4), Defendant BFL Three stated that Plaintiffs are not arguing that they have a claim under any of the four traditional exceptions. Plaintiffs did not disagree. Indeed, Plaintiffs Memorandum in Opposition to Defendant BFL Three's Motion to Dismiss makes no argument that its First Amended Complaint states a claim against BFL Three under any of the four traditional exceptions. Rather, Plaintiffs memorandum is devoted to arguing that its First Amended Complaint states a claim under the substantial continuity exception. Moreover, after a review of

the allegations in the First Amended Complaint, Plaintiffs do not make sufficient allegations relating to the four traditional exceptions to state a claim.[2] Plaintiffs do not even make the general allegation that Defendant BFL Three impliedly agreed to assume Defendant Harberts Foods' obligations. Plaintiffs do not allege, as is required for the de facto merger and mere continuation exceptions, that there is a continuity of shareholders, officers, or directors between Defendant BFL Three and Defendant Harberts Foods. See Sylvester Bros. Dev. Co. v. Burlington N. R.R., 772 F.Supp. 443, 448-49 (D. Minn. 1990) (noting that "[c]ourts have consistently required continuity of shareholders to support the application of this [de factor merger] exception," and that one must demonstrate "a sufficient continuity of stock, shareholders or directors" between the two companies "to impose liability . . . under the traditional mere continuation exception"); Anderson v. City of Minnetonka, No. CV 3-90-312, 1993 WL 95361, at *7 (D. Minn. Jan. 27, 1993) ("As there is no continuity of officers, directors or shareholders between Nevens I and Carrion/Nevens II or between Carrion/Nevens II and Nevens III, the traditional application of the "mere continuation" exception would result in a finding of no successor liability."). Finally, Plaintiffs make no mention of any fraud.

Accordingly, Plaintiffs' First Amended Complaint states a claim under the substantial continuity exception, and, therefore, Defendant BFL Three's motion should be denied.

---

[2]All of Plaintiffs' allegations with respect to Defendant BFL Three are reproduced supra page 9 and 10 herein, with the exception of the initial allegation: "Plaintiffs reallege and incorporate by reference herein paragraphs one through seventeen." (First Am. Compl. ¶18).

Based upon the foregoing and all the files, records, and proceedings herein,

**IT IS HEREBY RECOMMENDED that:**

1. Defendant BFL Three's Motion to Dismiss Plaintiffs' First Amended Complaint Against BFL Three, LLC Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (Doc. No. 10) should be **DENIED**.

Dated: January 28, 2003

Susan Richard Nelson
SUSAN RICHARD NELSON
United States Magistrate Judge

Under D. Minn. LR 72.1(c)(2) any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by February 7, 2003, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections. Any party wising to oppose such objections must file and serve all parties with its response. Failure to comply with this procedure may operate as a forfeiture of thc objecting party's right to seek review in the Court of Appeals.